**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MEYERS, an individua; and LAUREN MEYERS, an individual, | Case No.:  2:24-cv-01529-MEMF-AS |
| Plaintiffs, | **ORDER GRANTING EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER TO RESTRAIN THE TRUSTEE'S SALE [ECF NO. 11]** |
| v. | |
| FREEDOM MORTGAGE CORP., a business entity; and DOES 1-50, inclusive, | |
| Defendants. | |

Before the Court is the Ex Parte Application for a Temporary Restraining Order to Restrain the Trustee's Sale filed by Plaintiffs Stephen and Lauren Meyers. ECF No. 11. For the reasons stated herein, the Court hereby GRANTS the Ex Parte Application for a Temporary Restraining Order to Restrain the Trustee's Sale.

/ / /

**I.   Factual Background[1]**

Plaintiffs Stephen and Lauren Meyers (the "Meyers" or "Plaintiffs") are the owners of the property located at 4833 Blackthorne Ave, Long Beach, CA 90808 (the "Property"). Compl. ¶ 2. Defendant Freedom Mortgage Corporation ("Freedom Mortgage") is the loan servicer on Plaintiffs' loan for the Property. Compl. ¶ 3.

Plaintiffs purchased the Property on or around May 17, 2018, and obtained a first lien mortgage from Freedom Mortgage for $610,500 as part of the process. Compl. ¶ 12. On or around October 2023, the Meyers contacted Freedom Mortgage to inquire about foreclosure prevention alternatives available to them, as the Meyers had fallen behind in their mortgage payments due to financial difficulties. Compl. ¶ 13. Specifically, the Meyers owed an arrearage that had accumulated on the loan. *Id.* Freedom Mortgage's representatives told the Meyers that they did not need to submit a formal application, as Freedom Mortgage had the relevant financial information at hand. Compl. ¶ 15. From October through December 2023, Mr. Meyers regularly called Freedom Mortgage to follow up on Freedom Mortgage's review of the Meyers's available options. Compl. ¶ 16.

In December 2023, Freedom Mortgage informed the Meyers that their request for a loan modification was denied. Compl. ¶ 20.

**II.   Procedural History**

On January 19, 2024, the Meyers filed their Complaint in the Superior Court of California for the County of Los Angeles. The Complaint alleges the following five causes of action: (1) Violation of California Civil Code section 2923.7; (2) Violation of California Civil Code section 2923.6(f); (3) Violation of California Civil Code sections 2923.6(c), (3); Violation of 12 C.F.R. section 1024.41; and (5) Violation of California Business & Professions Code section 17200. *See* Compl. On February 23, 2024, Freedom Mortgage removed the action to this Court. *See* ECF No. 1.

On March 27, 2024, the Meyers filed the present Ex Parte Application for a Temporary Restraining Order to Restrain the Trustee's Sale. ECF No. 11 ("Application" or "Appl."). Freedom

---

[1] The following factual background is derived from the allegations in Plaintiffs' Complaint, ECF No.1-3 ("Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

Mortgage filed an opposition on April 1, 2024, along with a Request for Judicial Notice. ECF Nos. 13 ("RJN"), 13-1 ("Opposition" or "Opp'n"). The Meyers filed a response in support of their Application on April 1, 2024. ECF No. 14 ("Reply").

## REQUEST FOR JUDICIAL NOTICE (ECF NO. 13)

### III.   Applicable Law

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may take judicial notice of "undisputed matters of public record," but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Public records, including documents on file in federal or state court, are proper subjects of judicial notice. *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).

### IV.   Discussion

Freedom Mortgage asks the Court to take Judicial Notice of the following exhibit: Trustee's Objection to Confirmation of Debtor's Chapter 13 Plan Under 11 U.S.C. §§ 1322, 1325, and 1326; Declaration in Support; Notice of Possible Dismissal or Conversion under 11 U.S.C. § 1307, In re Stephen Meyers, 2:23- bk-14360-WB (Bankr. C.D. Cal. 2023). The Court declines to take judicial notice of this document as the document is not necessary not relevant to the Court's determination of the Application. As such, the RJN is DENIED.

## EX PARTE APPLICATION (ECF NO. 11)

### I.   Applicable Law

#### A. Ex Parte Standard

In the Central District, a party seeking ex parte relief must comply with (1) the Local Rules and Federal Rules of Civil Procedure, and (2) the standards set forth in *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Local Rule 7-19.1 requires a party filing an ex parte application to:

1

***L.R. 7-19 Ex Parte Application.*** An application for an ex parte order shall be accompanied by a memorandum containing, if known, the name, address, telephone number and e-mail address of counsel for the opposing party, the reasons for the seeking of an ex parte order, and points and authorities in support thereof. An applicant also shall lodge the proposed ex parte order.

2

3

***L.R. 7-19.1 Notice of Application.*** It shall be the duty of the attorney so applying (a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application.

4

5

6

C.D. Cal. R. 7-19, 7-19.1.

7

Under *Mission Power*, a party seeking ex parte relief must establish (1) that the requesting

8

party will be irreparably prejudiced if the motion is heard on a normal schedule and (2) that the

9

requesting party did not create the crisis requiring ex parte relief. *Mission Power*, 883 F. Supp. at

10

492.

11

**B. Temporary Restraining Order**

12

The standard for issuing a temporary restraining order ("TRO") is the same as that for issuing

13

a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n. 7

14

(9th Cir. 2001). A TRO is an "extraordinary remedy that may only be awarded upon a clear showing

15

that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 550 U.S. 7, 22

16

(2008).

17

A party seeking preliminary injunctive relief must make a "clear showing" that: (1) it is

18

likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of

19

preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public

20

interest. *Id.* at 7, 20, 22. The Ninth Circuit employs a sliding scale approach "under which a

21

preliminary injunction c[an] issue where the likelihood of success is such that serious questions

22

going to the merits were raised and the balance of hardships tips sharply in [the moving party's]

23

favor," provided that the moving party also makes a showing of irreparable harm and that an

24

injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32,

25

1135 (9th Cir. 2011) (citation and internal quotation marks omitted (holding that the "serious

26

questions" approach survives *Winter*)).

27

Injunctions can take one of two forms: mandatory or prohibitory. A prohibitory injunction

28

preserves the status quo by preventing a party from taking action. *Marlyn Nutraceuticals, Inc. v.*

*Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). A mandatory injunction does the reverse—it orders a party to take action. *Id.* "[M]andatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation damages." *Id.* Distinguishing between the two types of injunctions is often a complex task, and the approach is not without controversy. *Hernandez v. Sessions*, 872 F.3d 976, 997-98 (9th Cir. 2017). However, this Court is bound by circuit precedent to do so. *Id*. at 978.

The Court emphasizes that "the findings of fact and conclusions of law made by a court granting a preliminary injunction *are not binding* at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (holding that findings at preliminary injunction stage were not binding on district court at the summary judgment stage).

## II.   Discussion

As the Court explains further below, the Court finds that the Meyers have shown their compliance with the *ex parte* standard and that the *Winter* factors weigh in favor of granting a temporary restraining order.

### A.  The Meyers Have Met the Requirements under the Local Rules and *Mission Power*

The Court finds that the Meyers have complied with Local Rule 7-19. In her declaration, the Plaintiffs' counsel details her efforts to comply with the notice requirements of the local rules. ECF No. 11-2 ("Brewer Declaration" or "Brewer Decl."), ¶¶ 2–3.[2] Specifically, Ms. Brewer on March 26, 2024, one day before the Meyers filed the Application, Ms. Brewer sent an email to counsel for Freedom Mortgage advising counsel that the Meyers would file the Application the next day (March 27, 2024). Brewer Decl., ¶ 2. Ms. Brewer also provided notice to the foreclosure trustee, an agent of Freedom Mortgage, at email addresses provided by counsel for the foreclosure trustee. Brewer Decl., ¶ 3.

---

[2] The Brewer Declaration appears to be misnumbered, as there are two paragraphs numbered "1." The Court cites the paragraphs as if they were correctly numbered.

Plaintiffs' briefing does not explicitly address *Mission Power*, but the Court evaluates the factors nonetheless. First, the Court finds that Plaintiffs will be irreparably prejudiced if they had to move on the standard briefing schedule because the foreclosure sale is scheduled to take place on April 4, 2024. The standard briefing schedule contemplates that a motion be filed forty-two days prior to the hearing, by which time the foreclosure sale would have occurred. The second factor— whether the Meyers created the need for ex parte relief—is less clear to the Court, as neither party has provided sufficient information for the Court to evaluate this factor. For example, the Meyers have not provided any information as to *when* they became aware that the foreclosure sale was scheduled for April 4. Depending on how long the Meyers have known about the sale date, they may or may not have created the need for ex parte relief. It appears that the Meyers have known about the sale as late as February 26, 2024, as in Freedom Mortgage's answer, Freedom Mortgage asserts that the "foreclosure sale has been scheduled for April 4, 2024." ECF No. 5 at 13. However, even if the Meyers had filed a motion on February 26, 2024, they still would not have been able to secure a hearing date prior to the sale pursuant to the standard briefing schedule.

## B. The Meyers Have Shown That the *Winter* Factors Weigh in Favor of Granting a TRO

As discussed further below, the Court finds that the Meyers have made the requisite showing under *Winter*.

### i. The Meyers have shown a likelihood of success on the merits for two of their claims.

The Meyers base their Application on two of their causes of action—that for violation of California Civil Code section 2923.7 (first cause of action) and violation of California's Unfair Competition Law (fifth cause of action). As the Court explains further below, the Meyers have shown a likelihood of success for both causes of action.[3]

---

[3] The Meyers do not base their Application on their remaining causes of action, and as such, the Court does not consider the other causes of action. Freedom Mortgage asserts that the Meyers base their Application on a section of the California Civil Code for which they have not asserted any claim in their Complaint. Opp'n at 10. This is contrary to the record; the Meyers assert claims under both the UCL and California Civil Code Section 2923.7 in the Complaint. *See* Compl.

1. *The Meyers have shown a likelihood of success on their Section 2923.7 claim.*

Plaintiffs' first cause of action is for a violation of California Civil Code section 2923.7

(hereinafter, "Section 2923.7"). The relevant provisions of Section 2923.7 provide that:

> (a) When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.
> (b) The single point of contact shall be responsible for doing all of the following:
> (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.
> (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.
> (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.
> (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.
> (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code §§ 2923.7(a), (b).

To invoke the protection of Section 2923.7, a plaintiff must show that the first lien mortgage or deed of trust satisfiers either of the following conditions: (1) that "the first lien mortgage or deed of trust is secured by *owner-occupied* residential real property containing no more than four dwelling units" where "owner-occupied" "means that the property is the *principal residence* of the borrower and is security for a loan made for personal, family, or household purposes;" or (2) "the first lien mortgage or deed of trust is secured by residential real property that is occupied by a tenant. . . ." Cal. Civ. Code § 2924.15(a) (emphasis added). "Principal residence" appears to be undefined. *See Chin King Wong v. Wells Fargo Bank, N.A.*, Case No. 2:18-cv-02811-TLN, 2023 U.S. Dist. LEXIS 175523, at *14 (E.D. Cal. Sept. 28, 2023) ("However, the law is not clear on how courts should determine whether a property is a principal residence under the HBOR."). Here, the Meyers argue that the Property has served as their "primary residence" since 2018, but that the Property is currently under construction. Appl. at 7. The Meyers also argue that they receive mail and utility bills at the Property. *Id.*; *see Wong*, U.S. Dist. LEXIS 175523 at *14–*15 ("Courts have found, through evidence including telephone bills . . . and other bills in the borrower's name can be used to show proof of occupancy."). However, a property has been found to be not "owner-occupied" where

1   it is used for business and mail-forwarding purposes only. *Masson v. Selene Fin. LP*, Case No. 12-

2   05335 SC, 2013 U.S. Dist. LEXIS 9872, at *7–*8 (N.D. Cal. Jan. 24, 2013). Here, the Court finds

3   that that Meyers have shown that the Property is their principal residence for the purposes of their

4   claims. Mr. Meyers has testified that the Property is maintained as his "primary residence" and that

5   after construction is completed, he and Mrs. Meyers intend to move back home. ECF No. 11-3

6   ("Meyers Decl."), ¶ 13. The Property is also the Meyers billing address. *Id.* It thus appears to the

7   Court that Meyers are only temporarily occupying some other residence.

8        Here, the Meyers allege that Freedom Mortgage violated Section 2923.7 by (1) failing to

9   assign the Meyers a single point of contact and (2) failing to inform the Meyers of the

10  documentation they needed to provide to support their application. Appl. at 7–8. Freedom Mortgage

11  counters that it did provide the Meyers with a single point of contact. Opp'n at 11; *see* ECF No. 13-5

12  at 2. The evidence submitted by Freedom Mortgage shows that, on October 26, 2023, Freedom

13  Mortgage sent the Meyers a letter informing them that Freedom Mortgage had assigned the Meyers a

14  single point of contact, and provided the Meyers with the contact's first name, teller number, and a

15  toll-free number by which the Meyers could speak to their point of contact. ECF No. 13-5 at 2. The

16  Meyers counter that—contrary to Freedom Mortgage's alleged appointment of a single point of

17  contact—Mr. Meyers spoke to a different individual in Freedom Mortgage's loss mitigation

18  department every time he called to reach his designated point of contact. Reply at 2.

19       The parties do not provide the Court with any authority as to whether this specific situation—

20  where a designated contact is provided but a borrower ends up speaking to different individuals—

21  constitutes a violation of Section 2923.7(a). Although designating a single point of contact *may* be

22  construed as "technical compliance" with Section 2923.7(a)'s requirement, the Court does not find

23  that a defendant may evade the requirements of Section 2923.7(a) solely through the formal

24  designation of a specified point of contact. In *Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App.

25  5th 279, 302–03 (2022), the California Court of Appeal held that the plaintiff sufficiently stated a

26  violation of Section 2923.7(a) where the plaintiff alleged that she could not reach her designated

27  point of contact and was given inconsistent and inaccurate information by other representatives.

28  Similarly, here, the Meyers assert, and Freedom Mortgage does not counter, that, from October

1     through December 2023, Mr. Meyer spoke to a different Freedom Mortgage representative each time

2     he called and that the various representatives did not fulfill the role of the *single* point of contact. *See*

3     Opp'n at 11–12 (addressing Plaintiffs' Section 2923.7(a) argument); Reply at 3 (stating that the

4     generic number Freedom Mortgage provided resulted in Mr. Meyers "speaking to a different

5     representative each time [he] called[.]").

6         The Meyers also allege that Freedom Mortgage violated Section 2923.7(b) by failing to: (1)

7     inform the Meyers what documents they would need to provide to support their application for a

8     foreclosure prevention alternative; (2) ensure that the Meyers were reviewed and considered for all

9     foreclosure prevention alternatives offered by Freedom Mortgage; and (3) inform the Meyers how

10     they could appeal the decision not to modify their loan. Compl. ¶¶ 27(a)–(c). Freedom Mortgage

11     does not address this argument. *See generally* Opp'n. The only pieces of evidence concerning this

12     claim are two letters provided by Freedom Mortgage at ECF No. 13-5. In the letter appointing the

13     Plaintiffs' specific point of contact, there is some information concerning the options the Meyers

14     have. In the other letter, Freedom Mortgage lists some options available to the Meyers as well as

15     their eligibility. However, Freedom Mortgage does not provide any evidence that it complied with

16     Section 2923.7(b) by coordinating the receipt of any required documents or by communicating the

17     processes by which the Meyers could apply for any available foreclosure prevention alternative.

18         The Court thus finds that the Meyers have shown a likelihood of success as to their Section

19     2923.7 claims.

20                  *2.   The Meyers have shown a likelihood of success on their UCL claim.*

21         California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice and

22     unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The statute is

23     written in the disjunctive, and a business act or practice need only meet one of the prongs to be

24     considered a violation of the UCL. *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 986 (2008). A

25     plaintiff can plead a UCL violation under the "unlawful" prong by pleading that a business violated a

26     federal, state, or local law. *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th

27     163, 180 (1999).

28

Here, Freedom Mortgage argues that Plaintiffs' UCL claim necessarily fails because the Meyers cannot establish a violation of another law—that is, because Plaintiffs' other claims fail, the UCL claim also fails. However, as the Court found above, the Meyers have shown a likelihood of success as to their first cause of action for violation of California Civil Code section 2923.7.

ii.   The Meyers have shown irreparable harm.

The Court next considers whether the Meyers have shown irreparable harm, that is harm that will not be remedied simply via monetary damages. *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 471–72 (9th Cir. 1984) ("Mere financial injury, however, will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."). Freedom Mortgage argues that the Meyers have not shown that they will suffer *irreparable* harm because they do not live at the Property, and as such, are not at risk of losing their home; accordingly, any harm they may experience can be remedied with monetary damages. The Court finds that Meyers declaration does not support a determination that the Meyers currently live at the Property, in the back house or in any other part of the Property. Mr. Meyers merely states that the back house is "habitable," not that it is actually *habited* by the Meyers or anyone else. ECF No. 11-3 ("Meyers Decl.,"), ¶ 13.

The Court finds that the irreparable harm inquiry does not end at the question of whether the Meyers live at the Property currently. First, there is no binding authority on whether a plaintiff must show that he is *currently occupying* a residence in order to show irreparable harm in the foreclosure context. Second, there is non-binding authority going both directions on whether a plaintiff must show that a property is their *residence*—and not rental property—in order to show irreparable harm in the foreclosure context. *Compare Field v. Genova Capital Inc.*, Case No. 2:20-cv-09563-ODW, 2020 U.S. Dist. LEXIS 195713, at *5 (C.D. Cal. Oct. 21, 2020) (finding no irreparable harm where the property at issue was used to generate income as a *rental property* and *not* as the plaintiff's primary residence) *with In re Baroni*, Case No. CV 20-4338-MWF, 2021 WL 9181833, at *3 (C.D. Cal. Feb. 5, 2021) ("The Court disagrees that the loss of real property can necessarily be remedied by damages merely because the property at issue is an income-producing asset rather than a

1   movant's primary residence."); *Martin v. Litton Loan Servicing LP*, Case No. 2:12-cv-00970-MCE,

2   2013 WL 211133, at *21 (E.D. Cal. Jan. 16, 2013) ("Because the sale of the home would amount

3   to irreparable harm because real property is unique (even though plaintiff does not live there, her

4   tenants do. . . ."); *Davis v. Rama Capital Partners, LLC*, 2023 WL 7389285, at *1 (N.D. Cal. Oct.

5   10, 2023) ("To be sure, the real property at issue appears to be investment property. . . .Nevertheless,

6   there is a sufficient showing of irreparable harm because, if the real property were to be sold at a

7   public auction . . . it would likely be sold for far less than its market value, and likely below the

8   outstanding amount owed to the lender."). Third, it is a well-established principle of law that an

9   interest in real property is unique. *See Real Estate Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463,

10  466 (2008) ("The law generally presumes real property is unique. . . ."). The Ninth Circuit has

11  affirmed the "well-established [principle] that the loss of an interest in real property constitutes an

12  irreparable injury." *Park Village Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150,

13  1159 (9th Cir. 2011). The Ninth Circuit has also found irreparable harm where the property subject

14  to foreclosure was not residential (and thus, not a primary residence). *See Sundance Land Corp. v.*

15  *Community First Federal Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988).

16      Taking all of this together, the Court concludes that whether the Property is currently

17  occupied by the Meyers is not outcome-determinative. The Meyers have established, for purposes of

18  this Application, that the Property is their principal residence. In addition, it cannot be reasonably

19  disputed that the Meyers stand to lose their interest in the Property. At the foreclosure sale, Freedom

20  Mortgage's main concern will be to recoup its own losses and it will likely sell the Property for less

21  than it is worth, resulting in a loss of equity for the Meyers. *See* ECF No. 11-3 ("Meyers Decl."), ¶

22  18 ("My wife and I are facing the loss of our home . . . which has approximately $105,000 in

23  equity."). Given these facts, and given that real property is unique under the law, the Court finds that

24  the Meyers have established that they would suffer an irreparable harm.

25      iii.   The Meyers have shown that the balance of equities tips in their favor.

26      In balancing the equities, "a court must balance the competing claims of injury and consider

27  the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v.*

28

*Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987), *abrogated in part on other grounds by Winter*, 550 U.S. at 20.

Here, the parties each argue that the balance of equities tips in their favor. The Meyers argue that if the Property is sold to a bona fide third-party purchaser, they will lose title. Mot. at 10. Freedom argues that the Meyers have accumulated $237,154.43 in arrears, and have demolished the home on the Property, which considerably diminishes the value of the collateral on the loan. Opp'n at 17–18. The Court finds that here, the balance of the equities tips in Plaintiffs' favor. While the Court recognizes that the Property is security for the loan at issue, there does not appear to be a danger of further de-evaluation of the Property since the residence has already been torn down. The Meyers, on the other hand, stand lose title to the Property and can never replace that loss. Whether Freedom Mortgage forecloses today or sometime soon, however, Freedom Mortgage will likely be in the same position.

                        iv.   <u>The Meyers have shown that the public interest tips in the favor.</u>

Finally, the Court finds that an injunction will serve the public purpose. While the Court credits Freedom Mortgage's argument that the public has in interest in real property use that is productive, a temporary stay of the foreclosure sale to determine property rights (as the public also has an interest in borrowers maintaining their homes) will not detrimentally affect the public interest.

                        v.   <u>The Meyers must post a bond.</u>

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts have discretion in setting the amount of the bond. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (internal citations omitted).

Here, Freedom Mortgage asks that the Court require the Meyers to post $250,996.90 as a security (the amount of arrears owed). The Court finds that $100,000, the amount the Meyers have offered to Freedom Mortgage, is proper to pay costs and damages sustained by Freedom Mortgage if it is wrongly enjoined. Therefore, the Court will only require the Meyers to post a bond of $100,000.

**III.** __Conclusion__

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiffs' Application is GRANTED;

2. The parties shall meet and confer and file a joint briefing schedule and proposed hearing date to show cause why a preliminary injunction should not issue;

3. Pending the hearing on why a preliminary injunction should not issue, Defendants, their employees, agents and/or any other person or entity acting with them or on their behalf are restrained and enjoined from the sale of the property located at 4833 Blackthorne Ave, Long Beach, CA 90808;

4. The temporary restraining order will take effect once Freedom Mortgage is served this Order and a bond of $100,000 is posted by the Meyers in accordance with the Court's Local Rules;

5. This Order shall be binding upon the parties to this action and all other persons or entities who receive actual notice of this Order by personal service or otherwise; and

6. Plaintiffs shall serve Defendant and its counsel with a copy of this order and file proof of service no later than April 4, 2024.


IT IS SO ORDERED.

Dated: April 3, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge